**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**STEVEN R.,**

                                        **Plaintiff,**

        v.                                                    **5:19-CV-992**
                                                                    **(FJS)**

**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**
_____

**APPEARANCES**                              **OF COUNSEL**

**LAW OFFICES OF**                           **JUSTIN M. GOLDSTEIN, ESQ.**
**KENNETH HILLER, PLLC**                     **KENNETH R. HILLER, ESQ.**
6000 North Bailey Avenue – Suite 1A
Amherst, New York 14226
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**           **JESSICA RICHARDS, ESQ.**
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for Defendant

**SCULLIN, Senior Judge**


## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Plaintiff Steven R. brought this action pursuant to the Social Security Act, 42 U.S.C.

§ 405(g) (the "Act"), seeking judicial review of a final decision of the Commissioner of Social

Security (the "Commissioner"), denying his application for benefits.  *See generally* Dkt. Nos. 1,

12, 25.  Pending before the Court are the parties' cross-motions for judgment on the pleadings

under Rule 12(c) of the Federal Rules of Civil Procedure.  *See* Dkt. Nos. 12, 13.

## II. PROCEDURAL HISTORY AND BACKGROUND

Prior to filing his current claim, Plaintiff applied for benefits on January 17, 2013, alleging disability as of July 13, 2012. *See* Dkt. No. 22, Administrative Record ("AR") at 727.[1] Administrative Law Judge ("ALJ") Bruce Fein denied Plaintiff's prior claim on October 9, 2014. *See id.* at 727-736. Plaintiff appealed that decision, which the Appeals Council and the District Court upheld. *See id.* at 741-764.

Plaintiff brought his current claim for benefits on June 30, 2016, alleging disability as of July 13, 2012. *See id.* at 156.[2] Defendant initially denied Plaintiff's claim on September 2, 2016. *See id.* at 80. Thereafter, Plaintiff filed a timely request for a hearing on September 14, 2016. *See id.* at 92. A hearing was held on June 26, 2018, before Administrative Law Judge Robyn L. Hoffman in Syracuse, New York. *See id.* at 36-62. Matthew Nutting – a non-attorney representative who also represented Plaintiff with his prior claim – represented Plaintiff at the hearing. *See id.* at 38, 727. Plaintiff, through his representative, amended his alleged onset date of disability to October 7, 2016, during the hearing. *See id.* at 40, 152.

On August 21, 2018, ALJ Hoffman issued a written decision concluding that Plaintiff was not disabled as defined in the Act. *See id.* at 11-32. ALJ Hoffman's decision became the Commissioner's final decision on June 12, 2019, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See id.* at 1-4. Plaintiff then

---

[1] All references to page numbers in the Administrative Record are to the Bates Stamp numbers in the bottom right corner of those pages. All references to page numbers in other documents in the record are to the page numbers that the Court's ECF system generates, which appear in the top right corner of those pages.

[2] There appears to be a discrepancy between the date that ALJ Hoffman indicated that Plaintiff filed his current application for disability insurance benefits and the July 15, 2016 date on the application. *See* AR at 156, 607. However, this discrepancy does not impact the Court's decision in this case.

commenced this action on August 12, 2019, filing a supporting brief on February 25, 2020.  *See* Dkt. Nos. 1, 12.  The Commissioner filed a responsive brief on April 7, 2020.  *See* Dkt. No. 13.

In a Memorandum-Decision and Order issued May 4, 2020, this Court remanded this matter to the agency pursuant to sentence six of the Act and "'retain[ed] jurisdiction over the action pending further development and consideration by the ALJ[.]'"  *See* Dkt. No. 14 at 11 n.3 (quoting *Raitport v. Callahan*, 183 F.3d 101, 104 (2d Cir. 1999)).  Specifically, after reviewing the Administrative Record, the Court remanded "so that the agency may offer additional explanations about (1) which onset date, July 13, 2012 or October 7, 2016, the ALJ used in coming to her conclusion; (2) to what extent the ALJ relied on or deviated from the prior ALJ's decision, and (3) to which specific medical opinions the ALJ gave controlling weight in this case to support her finding that Plaintiff [was] not disabled."  *See id.* at 10.  The Court noted that these explanations would help it determine whether ALJ Hoffman "constructively reopened" the prior case by applying the July 13, 2012 onset date and whether she procedurally erred or violated Plaintiff's due process rights in failing to incorporate the prior decision and file into the Administrative Record.  *See id.*  The Court further remarked that, even if ALJ Hoffman did not constructively reopen the case, clarifying which onset date she used to analyze Plaintiff's claim would "permit the Court to determine whether there [was] substantial evidence to support [ALJ Hoffman's] final determination" – an analysis that the Court did not reach.  *See id.*

On remand from the Court, the Appeals Council issued an Order remanding this case back to ALJ Hoffman and vacated her August 21, 2018 decision.  *See* AR at 707.  Additionally, the Appeals Council ordered that ALJ Hoffman afford Plaintiff another opportunity for a hearing as well as "take any further action needed to complete the administrative record and

issue a new decision." *See id.* ALJ Hoffman requested clarification from the Appeals Council and explained her doubts that it had jurisdiction to vacate her prior decision. *See id.* at 608, 787, 788. The Office of the Chief Administrative Law Judge concurred with ALJ Hoffman's request on October 14, 2020. *See id.* at 712. More than nine months after ALJ Hoffman requested clarification, the Appeals Council responded to and denied her formal request. *See id.* at 712-714. The Appeals Council concluded that the only way for the agency to comply with the Court's order was to vacate the August 21, 2018 decision and direct the ALJ to issue a new one that complied with the Court's order and responded to the Court's questions. *See id.* at 713. Additionally, the Appeals Council noted that Plaintiff met the insured status requirements of the Act through December 31, 2018, even though ALJ Hoffman had issued her decision four months prior to that date; and, thus, it directed that, "[u]pon remand, the [ALJ] will necessarily adjudicate the issue of disability through [Plaintiff's] date last insured, and as such, [Plaintiff] must be offered an opportunity for a hearing and evidentiary development may be necessary in order to evaluate this previously unadjudicated period." *See id.*

The parties attempted to conduct hearings on May 13, 2021, and May 14, 2021, but due to ALJ Hoffman's calendar and Plaintiff's failure to appear, the hearing was rescheduled and held on May 20, 2021. *See id.* at 634-657, 894-895. Mr. Nutting again represented Plaintiff at the hearing. *See id.* at 637.

On June 30, 2021, ALJ Hoffman issued a new written decision, in which she made the following findings "[a]fter careful consideration of the entire record…"

    1) Plaintiff "last met the insured status requirements of the Social Security Act on December 31, 2018."

    2) "During the period from October 7, 2016 through December 31, 2018, [Plaintiff] did not engage in substantial gainful activity."

3) "During the period from October 7, 2016 through December 31, 2018, [Plaintiff] had the following severe impairments: lumbar degenerative disc disease and herniated disc."

4) "During the period from October 7, 2016 through December 31, 2018, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."

5) "[D]uring the period from October 7, 2016 through December 31, 2018, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except the claimant had additional limitations.  Specifically, [Plaintiff] could occasionally lift and carry twenty pounds; could frequently lift and carry ten pounds; could sit for up to six hours; and could stand or walk for approximately six hours, all in an eight-hour workday with normal breaks.  He could occasionally climb ramps, stairs, ladders, ropes, or scaffolds; and could occasionally balance, stoop, kneel[,] crouch, and crawl."

6) "During the period from October 7, 2016 through December 31, 2018, [Plaintiff] was unable to perform any past relevant work."

7) Plaintiff "was born on October 8, 1966 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  [Plaintiff] subsequently changed age category to closely approaching advanced age."

8) "During the period from October 7, 2016 through December 31, 2018, [Plaintiff] had a limited education."

9) "During the period from October 7, 2016 through December 31, 2018, transferability of job skills was not an issue in this case because [Plaintiff's] past relevant work was unskilled."

10) "During the period from October 7, 2016 through December 31, 2018, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed."

11) Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from October 7, 2016, the amended

> alleged onset date, through December 31, 2018, the date last
> insured."

*See* AR at 613-627 (citations and footnote omitted).

Following ALJ Hoffman's 2021 decision denying benefits, Plaintiff submitted a supplemental brief to this Court on January 7, 2022, further supporting his motion for judgment on the pleadings. *See* Dkt. Nos. 12, 25. Defendant filed a responsive brief on February 14, 2022. *See id.* In support of his motion, Plaintiff argued that ALJ Hoffman (1) failed to consider Plaintiff's mental and psychological impairments as evidenced in the record and (2) erroneously determined Plaintiff's residual functional capacity ("RFC") without identifying supporting evidence in the record.

## III. DISCUSSION

### A.  Standard of review

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). Accordingly, a reviewing court "'may not substitute [its] own judgment for that of the [Commissioner], even if [it] might justifiably have reached a different result upon a de novo review.'" *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 52 (2d Cir. 2016) (Summary Order) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)). In other words, "[t]he substantial evidence standard means once an ALJ finds facts, [a reviewing court may] reject those facts 'only if a

reasonable factfinder would *have to conclude otherwise*.'"  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quotation and other citation omitted).

To be eligible for benefits, a claimant must show that he suffers from a disability within the meaning of the Act.  The Act defines "disability" as an inability "to engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

1) The ALJ first determines whether the claimant is currently engaged in SGA. *See* C.F.R. §§ 416.920(b), 416.972.  If so, the claimant is not disabled.  *See* 20 C.F.R. § 416.920(b).

2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments.  *See* 20 C.F.R. § 416.920(c).  If not, claimant is not disabled.  *See id.*

3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings").  If so, the claimant is disabled.  *See* 20 C.F.R. § 416.920(d).

4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do his past relevant work.  *See* 20 C.F.R. § 416.920(e), (f).  If so, the claimant is not disabled.  *See* 20 C.F.R. § 416.920(f).

5) If the claimant cannot perform his past relevant work, the ALJ determines if he can perform other work, in light of his RFC, age, education, and experience.  *See* 20 C.F.R. § 416.920(f), (g).  If so, then he is not disabled.  *See* 20 C.F.R. § 416.920(g).  A claimant is only entitled to receive benefits if he cannot perform any alternative gainful activity.  *See id.*

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step if the analysis proceeds that far.  *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (citation omitted).

**B.      Whether ALJ Hoffman's RFC finding is supported by substantial evidence**

Plaintiff contends that ALJ Hoffman's RFC findings are not supported by the substantial evidence in the record.  *See* Dkt. No. 25 at 8-10.  According to Plaintiff, ALJ Hoffman's RFC finding in her June 2021 decision slightly deviates from the RFC finding in her August 2021 decision.  *See id.* at 9.  Furthermore, Plaintiff asserts that ALJ Hoffman rejected multiple impairments as severe based upon a "misreading of the record," "failed to identify substantial evidence supporting the ability to perform the range of light work reflected in the RFC," and "failed to consider the combined effects of both severe and non-severe impairments when crafting the RFC finding."  *See id.* at 9-24.  These issues can be summarized as whether, in coming to her RFC finding, ALJ Hoffman erroneously failed to (1) consider Plaintiff's cognitive and psychological impairments as evidenced in the record and (2) identify the substantial evidence in the record supporting her finding with respect to Plaintiff's physical impairments. The Court addresses each in turn.

*1.   Plaintiff's alleged mental impairments*

First, Plaintiff argues that ALJ Hoffman only found lumbar spine disorders to be severe at Step 2, despite treatment for and corresponding objective findings relating to other medically determinable impairments, including psychiatric symptoms and his need for a low-stress job. *See id.* at 11-12.  Plaintiff contends that ALJ Hoffman failed to consider the interaction between

his pain, mood, stress, and sleep, and consultative psychological examiner, Dr. Jeanne A.

Shapiro, Ph.D.'s finding that Plaintiff had mild-to-moderate limitations in his ability to deal with

stress and mild limitations in multiple other areas, such as learning new tasks and decision

making.  *See id.* at 12.  For example, Plaintiff points to Dr. Shapiro's conclusions that his

"[d]ifficulties [we]re caused by psychiatric symptoms and cognitive deficits" and that his

psychiatric problems "may interfere with [his] ability to function to some degree on a daily

basis."  *See id.* (quoting AR at 453).

Plaintiff further contends that stress-related limitations and additional non-exertional

mental limitations are consistent with his treatment record.  *See id.* at 13.  For example, his

treating physician's assistant, Sarah Oddo, MS, RPA, prescribed Plaintiff Celexa for his mood,

noted that he had increased stress and chronic back pain, suffered from depression and anxiety,

and was under a lot of stress.  *See id.*  Pointing to his records from PA Oddo, Plaintiff asserts

that ALJ Hoffman erred in finding that his mental status exams were unremarkable or that they

did not support more than a slight or minimal limitation in functioning.  *See id.*  Plaintiff also

faults ALJ Hoffman for rejecting his mental conditions as severe due to being "episodic" rather

than "chronic or uncontrolled."  *See id.* at 14.

Plaintiff further argues that ALJ Hoffman relied upon ambiguities, insufficiencies, and

gaps in the record to infer lack of cognitive impairments; and she inferred greater academic

functioning than alleged.  *See id.* at 15.  For example, Plaintiff notes that ALJ Hoffman found

that there were no formal IQ test results or school records available in the case, so she made

findings based on his past work that most closely related to a "cleaner, commercial or

industrial," under the Dictionary of Occupational Titles ("DOT").  *See id.* at 16.  According to

Plaintiff, a commercial cleaner is at the lowest level of education requirements, with reasoning,

math, and language at a level of 1.  *See id.*  Plaintiff argues that it is unclear how ALJ Hoffman

ultimately inferred greater academic and cognitive abilities based upon his unskilled past

relevant work.  *See id.* at 17.  He contends that "additional development [is] necessary to

resolve any ambiguities in the record."  *See id.*  Plaintiff therefore asserts that, because there

were numerous references in the record to his cognitive difficulties and there was a lack of clear

evidence, "the ALJ should have obtained a consultative intelligence examination to rule out

intellectual disability as instructed by Dr. Shapiro."  *See id.* at 18.  Plaintiff argues that ALJ

Hoffman did not satisfy her obligation to develop the administrative record fully; and, thus,

those deficiencies "prevent[ed] meaningful judicial review" and "deprived [Plaintiff] a full and

fair hearing."  *See id.* at 18-19.  Accordingly, Plaintiff requests that the Court remand this matter

for further development of the record and consideration of all severe and non-severe

impairments.  *See id.* at 19.

  In essence, Plaintiff appears to argue that ALJ Hoffman failed to consider the effects of

his mental impairments, which are "severe" impairments or combination of impairments, in

crafting the RFC.  Plaintiff further argues that ALJ Hoffman disregarded evidence in the record

that would support a finding of such impairment.  Even if non-severe, however, Plaintiff alleges

that ALJ Hoffman erred in failing to consider them when formulating the RFC.  As noted in

Step 2, above, to be found disabled, a claimant "must have a severe impairment."  20 C.F.R.

§ 416.920(c).  If a claimant does "not have any impairment or combination of impairments

which significantly limits [his] physical or mental ability to do basic work activities," then he

does not have a severe impairment and is not disabled.  *Id.*  "Although the Second Circuit has

held that this step is limited to 'screen[ing] out de minimis claims,' *Dixon v. Shalala,* 54 F.3d

1019, 1030 (2d Cir. 1995), the 'mere presence of a disease or impairment, or establishing that a

person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Cuenca v. Comm'r of Soc. Sec.*, No. 3:14-CV-0859 (GTS/WBC), 2016 WL 2865726, *3 (N.D.N.Y. Apr. 19, 2016) (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)), *adopted by* 2016 WL 2858858 (N.D.N.Y. May 16, 2016).  "Indeed, a 'finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have "no more than a minimal effect on an individual's ability to work."'" *Id.* at *4 (quoting *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12, 107 S. Ct. 2287 (1987))).  Furthermore, "[i]t is axiomatic that the ALJ is required to consider a plaintiff's mental impairments, even if not severe, in formulating the RFC." *Rookey v. Comm'r of Soc. Sec.*, No. 7:14-cv-914 (GLS), 2015 WL 5709216, *4 (N.D.N.Y. Sept. 29, 2015) (Sharpe, J.) (citing 20 C.F.R. 404.1545(a)(2)) (other citations omitted).

In Plaintiff's 2018 hearing, he testified that he had completed eighth grade in school and never got a GED.  *See* AR at 854.  Plaintiff explained that he could not read a newspaper or a book and had to read several pages before understanding what he was reading.  *See id.*  He also stated that he was not good with math, had to use a calculator to do basic math, and did not know how to give back change.  *See id.* at 854-855.  Up until the time of a car accident in 2012, Plaintiff worked as a custodian, which was his only past relevant work.  *See id.* at 855.  Plaintiff explained that he took Celexa to help with his nerves but did not receive mental health treatment or see a counselor.  *See id.* at 865.  Plaintiff did not testify regarding his mental health or cognitive abilities during his 2021 hearing.  *See generally id.* at 645-650.

In making this argument, Plaintiff primarily relies on Dr. Shapiro's report, in which she noted that Plaintiff had told her that he had completed the eighth grade in regular education and

did not have a history of psychiatric hospitalizations or outpatient psychiatric treatment.  *See id.* at 450.  According to Plaintiff, his primary care provider prescribed his psychiatric medication, which included 10 mg daily of citalopram (Celexa).  *See id.* at 450-451.  Plaintiff did not report any significant manic symptoms, hallucinations, delusions, obsessions, compulsions, phobias, or paranoia.  *See id.* at 451.  He stated, however, that he felt depressed and wanted to be alone, felt like crying every day, felt like he did not have a family after his mother's death, was unmotivated and lethargic, did not "feel like doing anything," had "nothing to look forward to in his day," and would get irritable and yell at his son "for no reason."  *See id.*  He denied any suicidal ideation, plan, or intent.  *See id.*  Additionally, Plaintiff complained of hypervigilance and nervousness when driving after his car accident in 2012, but he denied other symptoms that would warrant a diagnosis of PTSD or panic attacks.  *See id.*  He also stated that he was anxious around other people because he felt "claustrophobic, like he [could not] breathe," and that he "need[ed] his space."  *See id.*  Dr. Shapiro noted that Plaintiff's mood was neutral, and he expressed neither positive nor negative feelings; "[h]e stated that he did not feel anything."  *See id.* at 452.

Dr. Shapiro indicated that Plaintiff's intellectual functioning was estimated to be "in the deficient range."  *See id.* at 453.  She noted that Plaintiff's "general fund of information appear[ed] to be somewhat limited.  For example, he did not know in what direction the sun r[ose] or how many weeks [we]re in 1 year."  *See id.*  Plaintiff further reported to Dr. Shapiro that he could not manage money, had never made a check out, and had "never been good with money."  *See id.*  However, he was able to independently dress, bathe, and groom, prepare simple food, do general cleaning or laundry, drive, occasionally go shopping with his wife, socialize, and watch television and listen to the radio.  *See id.*

In her medical source statement, Dr. Shapiro concluded that Plaintiff did not have any limitations in understanding and following simple instructions and directions or in performing simple tasks. *See id.* He also did not have any limitations in maintaining attention and concentration for tasks and in attending to a routine and maintaining a schedule. *See id.* She noted that Plaintiff appeared to have mild limitations in performing complex tasks, learning new tasks, making appropriate decisions, and consistently relating to and interacting well with others. *See id.* Dr. Shapiro indicated that "[t]here appear[ed] to be mild-moderate limitations regarding his ability to deal with stress" and that his "[d]ifficulties [we]re caused by psychiatric symptoms and cognitive deficits." *See id.* She concluded that the results of her examination appeared to be "consistent with psychiatric problems" that "m[ight] interfere with [Plaintiff's] ability to function to some degree on a daily basis." *See id.* Ultimately, she diagnosed Plaintiff with unspecified depressive disorder, recommended ruling out intellectual disability, and suggested that he "become involved in treatment to deal with psychiatric symptoms." *See id.* at 453-454.

Plaintiff also points to his records from PA Oddo and her medical source statement. In that statement, PA Oddo concluded that Plaintiff could tolerate moderate work stress but noted that he had a history of depression and anxiety and should avoid high-stress situations. *See id.* at 507, 509. In his treatment notes with PA Oddo, she indicated that Plaintiff had "episodic mood disorders" and took Celexa and smoked marijuana, "which work[ed] well." *See id.* at 424, 430. Plaintiff's mood was euthymic, his affect was normal, he was cooperative, and his thought processes were not impaired. *See id.* at 427, 433, 437. He also reported to PA Oddo that his mood had been stable, he took medications as directed, slept well at night, his interests were good, his energy and concentration were normal, he did not have thoughts of self-harm,

and he denied any recent major panic attacks. *See id.* at 431. At another appointment, Plaintiff reported that his mood and energy levels were "up and down depending on the day," he was getting more frustrated, anxious, and stressed, but his interests were good. *See id.* at 438. PA Oddo diagnosed Plaintiff with anxiety disorder due to a known physiological condition but noted that his mood was stable. *See id.* at 435. In medical records following remand of this action, PA Oddo noted that Plaintiff only had an eighth grade education, could not use a computer, and had a hard time reading, writing, and learning. *See id.* at 920.

In ALJ Hoffman's 2021 decision, she incorporated and adopted her analyses from her 2018 decision. *See id.* at 614. In her 2018 decision, ALJ Hoffman thoroughly addressed Plaintiff's non-severe mental impairments and their impact on her RFC finding. *See id.* at 17-19. At that time, Plaintiff's mental disorders were characterized as anxiety, depression, unspecified mood disorder, and marijuana use. *See id.* at 17. ALJ Hoffman noted that, pursuant to the evidence in the record, Plaintiff did not have difficulties in understanding, remembering, or applying information, in interacting with others, or in concentrating, persisting, or maintaining pace. *See id.* She found that Plaintiff had mild difficulties adapting or managing himself, but that did not satisfy the paragraph "C" criteria of the applicable mental disorder listings. *See id.* According to ALJ Hoffman, because Plaintiff's medically determinable mental impairment caused no more than "mild" limitations in any of the four functional areas, it was non-severe. *See id.* Moreover, she noted that the medical record failed to establish more than minimal limitations in Plaintiff's ability to do basic work activities. *See id.*

Although Plaintiff contends otherwise, ALJ Hoffman afforded great weight to Dr. Shapiro's medical opinion because it was well-supported by the objective clinical findings and Plaintiff's limited course of mental health treatment. *See id.* at 18. For example, ALJ Hoffman

pointed to Dr. Shapiro's findings that Plaintiff had mild-moderate limitations in dealing with stress, in making appropriate decisions, relating and interacting well with others, learning new tasks, and in performing complex tasks. *See id.* ALJ Hoffman also indicated that Dr. Shapiro's finding that Plaintiff retained considerable mental capacity – including understanding and following simple instructions and directions, performing simple tasks, maintaining attention and concentration for tasks, attending to a routine, and maintaining a schedule – "is not inconsistent with the objective medical evidence and has been adopted in this case." *See id.*

With respect to PA Oddo, ALJ Hoffman afforded her assessment "little weight," finding that it was not well-supported "given the scant chronically positive objective clinical findings . . . including results of Ms. Oddo's own normal mental status exams." *See id.* at 18-19. ALJ Hoffman found that Plaintiff's purported limitations appeared to be based primarily on his subjective self-reports of symptoms and functional limitations that were inconsistent with the evidence. *See id.* at 19. Additionally, ALJ Hoffman noted Plaintiff's limited formal mental health treatment and his engagement in a range of activities that required significant mental demands. *See id.*

In her 2021 decision, ALJ Hoffman relied on her 2018 decision to find that Plaintiff's only severe impairments from October 6, 2016 through August 21, 2018 related to his lumbar degenerative disc disease and herniated disc. *See id.* at 614. With respect to Plaintiff's non-severe and non-medically determinable impairments, ALJ Hoffman found that they stayed the same during the period from August 22, 2018 through December 31, 2018. *See id.* at 615. In the only office visit to Plaintiff's primary care provider during that previously unadjudicated period, ALJ Hoffman noted that "a combination of medication and marijuana worked well for his mood disorders." *See id.* at 616 (citing Ex. B12F, AR at 944). She also noted that PA Oddo

described Plaintiff's mood disorders as "episodic" more than chronic or uncontrolled. *See id.* (citing Ex. B12F, AR at 944). Plaintiff was also doing well on his medication for anxiety. *See id.* (citing Ex. B12F, AR at 948). Thus, ALJ Hoffman specifically found that Plaintiff's mental impairments did not reach the level of severity to meet or medically equal one of the listed impairments of Appendix 1 for the period from October 7, 2016 through December 31, 2018. *See id.* at 617.

Based on the foregoing, the Court finds that ALJ Hoffman clearly considered Plaintiff's mental impairments, determined that they were non-severe, and took them into account when crafting Plaintiff's RFC. Furthermore, the Court finds that the substantial evidence in the record supports ALJ Hoffman's finding that Plaintiff's mental impairments were non-severe as they showed that his depression and anxiety were well-treated with Celexa and marijuana and would have no more than a minimum effect on his ability to work; Plaintiff also did not see a counselor or need in-patient psychiatric treatment. Finally, although Plaintiff contends that ALJ Hoffman should have developed more testimony during the hearings and inquired into an expert regarding his mental and cognitive functioning, Plaintiff never objected to the ALJ's questioning nor did he add that information to the record when given the opportunity to do so. Accordingly, the Court finds that it is inappropriate for Plaintiff to raise that issue now. *See Torres v. Astrue*, No. 11-cv-05260 (KAM), 2013 WL 802440, *9 (E.D.N.Y. Mar. 5, 2013). Thus, because ALJ Hoffman properly considered Plaintiff's non-severe mental impairments, the Court must next determine whether substantial evidence – identified in ALJ Hoffman's decision – supported her RFC finding.

### 2. *Substantial evidence supporting Plaintiff's physical impairments*

Plaintiff contends that ALJ Hoffman failed to identify the substantial evidence supporting the physical abilities within the RFC finding. *See* Dkt. No. 25 at 19. According to Plaintiff, many of ALJ Hoffman's findings are solely based upon her interpretation of the raw medical data; and, regardless of whether she properly weighed the medical opinion evidence, the resulting RFC finding is unsupported by the record. *See id.* at 20. Plaintiff asserts that ALJ Hoffman gave the opinion of the consultative examiner, Dr. Kalyani Ganesh, M.D., "greater weight" because his opinion was more consistent with a range of light work; however, Plaintiff argues, the vague terminology that he used did not actually support Plaintiff's ability to perform light work and was "too vague to constitute substantial evidence." *See id.* at 20-21. Plaintiff also points out that ALJ Hoffman rejected PA Oddo's opinion, even though her opinion was the only function-by-function opinion in the record regarding Plaintiff's abilities and limitations, and her opinion was more restrictive than the RFC finding. *See id.* at 21. Plaintiff argues that ALJ Hoffman rejected PA Oddo's opinion for improper reasons; specifically, she did not discuss the treatment relationship between PA Oddo and Plaintiff, the amount of medical evidence supporting the opinion, or the consistency of the opinion with the remaining medical evidence. *See id.* at 21-22, 24-25. For these reasons, Plaintiff asserts that ALJ Hoffman failed to consider the objective findings in PA Oddo's treatment notes. *See id.* at 22. Plaintiff also argues that it is unclear how ALJ Hoffman reached her conclusions relating to Plaintiff's ability to sit, stand, walk, and perform postural abilities occasionally, and she did not make it clear on which evidence she relied to conclude that he could occasionally climb ramps, stairs, ladders, ropes, or scaffolds or occasionally balance, stoop, kneel, crouch, or crawl. *See id.* at 22-23.

Thus, Plaintiff contends, ALJ Hoffman "failed to identify substantial evidence supporting the RFC finding, and remand is required for proper application of the legal standards." *See id.* at 24.

"'In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole," even if that finding does not perfectly correspond with any of the opinions of cited medical sources.'" *Peter F. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1003 (ML), 2022 WL 1504174, *8 (N.D.N.Y. May 12, 2022) (Lovric, M.J.) (quoting *Tanya S. v. Saul*, 410 F. Supp. 3d 436, 445 (N.D.N.Y. 2019) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order))). "An RFC 'will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations.'" *Deinna G. v. Saul*, No. 6:18-CV-1342 (NAM), 2020 WL 613964, *7 (N.D.N.Y. Feb. 10, 2020) (Mordue, S.J.) (quoting *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ's failure to identify evidence supporting his or her RFC finding requires remand for further development of the record and explanation. *See e.g.*, *Hershey v. Comm'r of Soc. Sec.*, No. 1:18-CV-833 (JJM), 2020 WL 1514749, *3-*5 (W.D.N.Y. Mar. 30, 2020).

In his consultative examination report, Dr. Ganesh noted that Plaintiff's chief complaint stemmed from a car accident in 2012 in which he suffered a fractured T12 and a herniated disc below that pushed against the nerve. *See* AR at 456. Dr. Ganesh remarked that Plaintiff complained of constant pain in his lower back that radiated down the hip all the way down to the knees and feet, and his pain was "brought on by prolonged walking, sitting, lifting, and carrying." *See id.* Plaintiff also reported that he suffered an injury to his right shoulder and had pain in his socket that was somewhat relieved with a cortisone injection. *See id.* He also

complained of constant aching pain in his shoulder associated with prolonged lifting or carrying. *See id.* Dr. Ganesh reported that Plaintiff did not appear to be in any acute distress, but he could not walk on his heels or toes and could not squat. *See id.* at 457. However, Plaintiff had a normal gait, stance, did not need assistive devices, and did not need help changing for the exam or getting on or off the exam table. *See id.* Upon examination, Dr. Ganesh found that Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. *See id.* at 458. Plaintiff did not have any scoliosis, kyphosis, or abnormality in his thoracic spine. *See id.* His lumbar spine had a flexion of 90 degrees, extension of 10 degrees, and lateral flexion and rotation were full bilaterally. *See id.* The standing leg raise test was negative bilaterally. *See id.* With respect to his shoulders, Dr. Ganesh found that Plaintiff had full range of motion of his left shoulder and his right shoulder had forward elevation of 140 degrees, abduction of 140 degrees, and full adduction and internal and external rotation. *See id.* Dr. Ganesh also noted that Plaintiff had full range of motion of his elbows, forearms, wrists, hips, knees, and ankles bilaterally. *See id.* Dr. Ganesh concluded that Plaintiff's prognosis was "stable, but guarded." *See id.* at 459. In his medical source statement, he opined that Plaintiff did not have any limitations in sitting, standing or walking but had a moderate limitation in lifting, carrying, pushing, and pulling. *See id.*

In PA Oddo's medical source statement, she indicated that Plaintiff had been diagnosed with a bulging lumbar disc, disc degeneration, and lumbar radiculopathy, and his prognosis was "fair." *See id.* at 507. PA Oddo concluded that Plaintiff could sit for 30 minutes at a time for at least six hours, stand for 15 minutes at a time, and stand and walk for less than two hours in an eight-hour workday. *See id.* She indicated that Plaintiff would need to shift positions at will

from sitting, standing, or walking, and would sometimes need to take unscheduled breaks, approximately once per hour, during which time Plaintiff would need to rest for 10-15 minutes. *See id.* at 508.  PA Oddo further concluded that Plaintiff could frequently lift ten pounds or less, occasionally lift twenty pounds, and never lift fifty pounds.  *See id.*  He could frequently look down, turn his head left or right, look up, and hold his head in a static position.  *See id.*  PA Oddo determined that Plaintiff could rarely twist, stoop, and climb stairs, and he could never crouch, squat, or climb ladders.  *See id.*  She also found that Plaintiff could frequently grasp, turn, and twist objects and use fine finger manipulations, but he could only occasionally reach. *See id.* at 508-509.  PA Oddo estimated that Plaintiff would be absent from work approximately four days per month, and he would frequently experience pain or other severe symptoms throughout the workday.  *See id.* at 509.

In his medical records from his appointments, PA Oddo indicated that Plaintiff suffered from arthralgia in his right knee and a herniated intervertebral disc in his lumbar spine following a 2012 car accident.  *See id.* at 424, 430, 437.  She also indicated that he had back surgery for his fractured lumbar region and herniated disc.  *See id.* at 425, 431, 438.  Upon examination, Plaintiff did not have any costovertebral angle tenderness.  *See id.* at 433.  Plaintiff reported to PA Oddo that he had several injections for his back injury and herniated disc and took Flexeril when needed, primarily at bedtime, for the pain.  *See id.* at 437.  He also told PA Oddo that he smoked marijuana to help with the pain.  *See id.*

In his most recent medical records, PA Oddo diagnosed Plaintiff with cannabis use, arthralgia of his right shoulder, cervicalgia, lumbago, and sacroiliitis.  *See id.* at 899.  Plaintiff reported increased lower back pain and left hip pain to PA Oddo.  *See id.*  To help with his pain, he had a back injection, started going to physical therapy and had felt some relief almost

immediately.  *See id.*  He also had a TENS unit and took Meloxicam and Cyclobenzaprine with

some relief.  *See id.*  His back and legs were reportedly achy.  *See id.*  Plaintiff complained of

pain in his left hip, buttock, and back at an 8/10, which made it hard for him to sleep, lift his left

leg up, and do activities such as putting on his socks.  *See id.* at 906.  Plaintiff declined a

Toradol shot for pain at his appointment but continued his usage of Prednisone and Flexeril.

*See id.* at 909.  At other appointments, he reported that he took Ibuprofen or Tylenol to help

manage his pain in addition to smoking marijuana.  *See id.* at 911-912.  He also reported that his

pain was worse in the winter and that he tried to stretch daily; he complained that "[s]itting

aggravate[d] the pain more so he ha[d] to keep moving."  *See id.* at 931.  Plaintiff also indicated

that he just dealt with the pain and did not want to return to an orthopedic or pain management

specialist.  *See id.* at 947.

Just as she did with respect to Plaintiff's mental impairments, ALJ Hoffman adopted and

incorporated her findings regarding Plaintiff's physical limitations from her 2018 decision.  *See*

*id.* at 620, 622.  In that decision, ALJ Hoffman [had] concluded that the RFC was generally

supported by Dr. Ganesh's medical opinion; and, although she did not adopt all of the

limitations that Dr. Ganesh identified, she afforded his opinion great weight because it was

"generally supported by the objective medical evidence that indicates that [Plaintiff] is

precluded from performing very heavy, heavy, and medium work activity due to his spine

disorder, but otherwise retains the maximum [RFC] to perform a range of light work activity."

*See id.* at 24.  She noted that Dr. Ganesh remarked that Plaintiff's disc was pushing against his

nerve, but that was not reflected in the medical record or repeat laboratory studies.[3]  *See id.*

---

[3] Plaintiff argues that this is an example of ALJ Hoffman "cherry-picking" evidence and
ignoring MRI findings from April 24, 2014, which showed displacement of the right S1 nerve
root and moderate central disc herniation and protrusion and mild thecal sac compression at L5-

However, she stated that those studies did show that Plaintiff had suffered a fracture in 2012, a possible re-fracture in 2013, and had mild degenerative changes and a moderated herniated disc. *See id.* at 24-25.

With respect to Plaintiff's back injury, ALJ Hoffman noted that he generally presented with more subjective findings rather than repeated, positive laboratory findings, which were reflected in the RFC. *See id.* at 25. For example, she noted that few exams showed active muscle spasms or trigger points of the spine or extremities; he had no chronic findings for redness, heat, edema, swelling, or effusion; and he only exhibited diminished sensation to vibration on one exam. *See id.* Repeat exams failed to show that Plaintiff suffered from significantly restricted range of motion of his cervical spine, upper or lower extremities, although he complained of tenderness, a decreased range of motion, and a positive Facet challenge test. *See id.*

Regarding PA Oddo's findings, ALJ Hoffman gave them "some weight, but not great weight" because her assessment was not well-supported given the scant chronically positive objective clinical findings, including results of PA Oddo's own physical exams. *See id.* at 26. ALJ Hoffman noted that, as recently as February 2016, PA Oddo had observed that Plaintiff had "no physical disability and his activities of daily living were normal." *See id.* Furthermore, Plaintiff's physical exams did not show worsening of his condition or limitations. *See id.* ALJ Hoffman remarked that PA Oddo identified greater postural limitations, but this was contrary to

---

S1. *See* Dkt. No. 25 at 24-25 (citing AR at 320). According to Plaintiff, the disc herniation was "'contacting the S1 nerve roots bilaterally,'" causing "'displacement [of the] right S1 [nerve] root.'" *See id.* at 25 (quoting AR at 320). Even if the ALJ overlooked this piece of evidence, the Court finds that it was harmless error as there is extensive record evidence that otherwise supports ALJ Hoffman's findings. *See Chambers v. Comm'r of Soc. Sec.*, No. 7:14-CV-190 (GTS), 2015 WL 6157434, *10 (N.D.N.Y. Oct. 20, 2015) (Suddaby, C.J.).

the objective medical evidence that showed that Plaintiff did not require assistance changing for exams, getting on or off exam tables, or rising from a seated position. *See id.* Plaintiff only had one or two exams that indicated he had difficulty walking on heels and toes, and he was only unable to squat at the consultative exam. *See id.* ALJ Hoffman further noted that Plaintiff did not have problems caring for his own personal needs, caring for his multiple pets, shopping, doing laundry, and doing general cleaning. *See id.* Although PA Oddo noted limitations in Plaintiff's reaching, there were no indications in the record that Plaintiff was unable to reach, handle, finger, feel, or use his upper extremities secondary to his lumbar spine disorder. *See id.* ALJ Hoffman therefore rejected PA Oddo's assessment because it was based "primarily on [Plaintiff's] subjective self-reports of symptoms and functional limitations that are inconsistent with the evidence." *See id.* ALJ Hoffman further noted Plaintiff's overall positive response to conservative treatment, his inconsistent statements about the severity of his symptoms, and his engagement in certain activities supported her finding that he was capable of light work. *See id.*

In her 2018 decision, ALJ Hoffman adopted limitations for lifting and carrying no more than twenty pounds but rejected additional exertional limitations because there was no substantial evidence to support those changes. *See id.* at 27. She noted that the medical evidence failed to establish that Plaintiff needed to use a cane, walker, or other assistive device. *See id.* Furthermore, ALJ Hoffman noted that Plaintiff reported engaging in activities that required prolonged standing or walking, such as walking his dog or fishing from the banks. *See id.* She also rejected Plaintiff's allegations of off-task behavior due to pain and side effects of medications as not supported by the various exams showing that he appeared awake, alert, and in no acute distress. *See id.* at 28. Specifically, ALJ Hoffman noted that, "[a]lthough there [we]re periodic gaps in treatment or cancelled medical appointments, [Plaintiff] was able to

- 23 -

attend other scheduled appointments without difficulty," which failed to support a claim of frequent absences from work.  *See id.*

Finally, in her 2018 decision, ALJ Hoffman found that Dr. Ganesh's medical opinion was more consistent with the record in its entirety than PA Oddo's opinion, including Plaintiff's limited alternative treatment modalities that indicated uncontrolled symptoms and his engagement in physical activities on a regular and continuing basis consistent with a range of light work.  *See id.* at 29.  ALJ Hoffman noted that, although Dr. Ganesh did not specifically define the term "moderate" in his restrictions, there was nothing "particularly vague about this medical opinion" given the few chronically positive objective clinical findings noted upon Plaintiff's physical examinations.  *See id.*  Moreover, she noted that Plaintiff and his representative "had the opportunity to submit additional evidence or submit any written statements to address Dr. Ganesh's report" but failed to do so.  *See id.*

In her 2021 decision, ALJ Hoffman further elaborated that she gave great weight to Dr. Ganesh's opinion with regard to finding Plaintiff's lumbar spine disorder to be severe and in ultimately crafting the RFC.  *See id.* at 620.  Although not all of Dr. Ganesh's findings were supported by objective clinical and laboratory findings, she still afforded his opinion great weight for the reasons articulated in her 2018 decision.  *See id.* at 620-621.  Also, with respect to the severity of Plaintiff's symptoms, ALJ Hoffman explained that she afforded PA Oddo little weight because she was not an acceptable medical source and because her opinions were not well-supported.  *See id.* at 621-622.  ALJ Hoffman noted that there was no worsening of clinical signs or laboratory findings relating to Plaintiff's spine disorders for the remaining unadjudicated period from August 22, 2018 through December 31, 2018, whether considering the impairment singly or in combination with other non-severe impairments.  *See id.* at 622.

Lastly, to the extent that Plaintiff argued that ALJ Hoffman "cherry-picked" limitations from the consultative examinations to fit with a pre-conceived RFC, she stated that such argument was unsupported.  *See id.* at 624.  Although ALJ Hoffman did not adopt Dr. Ganesh's opinion in total, his overall finding was that Plaintiff "retained considerable physical capacity despite his physical impairments," which was well-supported by the record and reflected in the RFC.  *See id.*

Upon reviewing ALJ Hoffman's analyses in both her 2018 and 2021 decisions, the Court rejects Plaintiff's argument that she failed to identify the evidence supporting her RFC determination.  ALJ Hoffman clearly identified the medical evidence on which she relied, which included, among others, Dr. Ganesh's opinions from his consultative medical exam and PA Oddo's treatment records.  Although it was not the focus of Plaintiff's argument, ALJ Hoffman also relied on Dr. Shapiro's examination and the opinion from State Agency Medical Consultant, O. Fassler, Ph.D., when considering Plaintiff's limitations and crafting his RFC. *See id.* at 620.  Furthermore, the Court finds that ALJ Hoffman properly looked at the record as a whole to determine Plaintiff's RFC; and, in considering all of the medical record evidence, Plaintiff's testimony of his subjective complaints, and the medical professionals' opinions, that indicated that Plaintiff suffered a lumbar disorder but generally functioned to the extent that he could do light work, the substantial evidence from the record supports her findings.

### 3.   ALJ Hoffman's Step 5 finding

Although Plaintiff does not challenge ALJ Hoffman's Step 5 analysis in his memoranda, given the Court's finding that the RFC is supported by the substantial evidence in the record, the Court next addresses whether ALJ Hoffman properly determined that – in light of that RFC and

Plaintiff's age, education, and work experience – jobs existed in significant numbers in the national economy that Plaintiff could perform.  Plaintiff's RFC demonstrated that he could perform "light work," with the additional limitations that he could occasionally lift and carry twenty pounds, could frequently lift and carry ten pounds, could sit for up to six hours, and could stand or walk for approximately six hours in an eight-hour workday with normal breaks.  *See* AR at 618.  Additionally, ALJ Hoffman restricted Plaintiff in that he could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds, and he could occasionally balance, stoop, kneel, crouch, and crawl.  *See id.*

In her 2018 decision, the analysis of which she adopted and incorporated into her 2021 decision, ALJ Hoffman found that the additional limitations had "little or no effect on the occupational base of unskilled light work."  *See id.* at 31.  Specifically, she noted that kneeling and crawling restrictions do not have a significant impact on the broad range of work available at any exertional level, and Plaintiff's postural limitations for occasionally stooping or crouching "do not significantly erode the occupational base for unskilled light work."  *See id.* ALJ Hoffman remarked that, although bending is required frequently at the medium and heavy exertional levels, "it is required only occasionally at most in light and sedentary positions."  *See id.*  Finally, she indicated that some limitations upon climbing and balancing is not a significant limitation at any exertional level.  *See id.*

In her 2021 decision, ALJ Hoffman adopted the above analysis and indicated that evidence received after the date of her 2018 decision did not change the result.  *See id.* at 626.  In addition to her prior analysis, ALJ Hoffman pointed to her RFC analysis and noted that there was "no objective medical evidence to support additional limitations greater than [Plaintiff's] established [RFC]."  *See id.* at 627.  She also concluded that, in the absence of any additional

- 26 -

non-exertional limitations or other physical work functions not addressed by the Social Security Rulings or DOT, "the testimony of a vocational expert is unnecessary." *See id.*

"'If a claimant has non-exertional limitations that "significantly limit the range of work permitted by his exertional limitations," the ALJ is required to consult with a vocational expert.'" *Delossantos v. Comm'r of Soc. Sec.*, No. 7:16-CV-0713 (GTS), 2017 WL 4011265, *8 (N.D.N.Y. Sept/ 11, 2017) (Suddaby, C.J.) (quoting *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986))). "'However, the "mere existence of a non-exertional impairment does not automatically . . . preclude reliance on the [Medical-Vocational] guidelines."'" *Id.* (quoting *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 603)). "'A non-exertional impairment "significantly limits a claimant's range of work when it causes an additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity."'" *Id.* (quoting *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 605-06)).

ALJ Hoffman explained that the additional limitations she set forth in Plaintiff's RFC did not significantly impact the broad range of work available at the light work exertional level. *See* AR at 632.  The Court finds that ALJ Hoffman properly assessed those limitations – in lifting, carrying, sitting, standing, walking, climbing, balancing, stooping, kneeling, crouching, and crawling – to support Plaintiff's severe lumbar and herniated disc impairments, for which there is substantial supporting evidence in the record.  As those limitations do not constitute significant limitations at the light work exertional level under the Social Security Rulings, Plaintiff did not have severe non-exertional impairments that warranted vocational expert testimony.  *See* SSR 83-14, 1983 WL 31254 (Jan. 1, 2983); SSR 85-15, 1985 WL 56857 (Jan.

1, 1985).  Furthermore, considering Plaintiff's severe physical impairments, non-severe mental impairments, his education level, work history, and the evidence in the record, the Court finds that ALJ Hoffman properly used the Medical-Vocational guidelines to conclude that jobs existed in significant numbers in the national economy that Plaintiff could perform.  As such, ALJ Hoffman properly concluded that Plaintiff was not disabled.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 12, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 13, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: June 10, 2022
    Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge